Tony John, Appellee, v. Julia C. John, Appellant.

511 N.W.2d 544

Filed July 6, 1993.  No. A-91-1186.

Warren S. Zweiback and Edith T. Peebles, of Zweiback, Hotz & Lamberty, P.C., for appellant.

William T. Ginsburg, of Zuber & Ginsburg, for appellee.

SIEVERS, Chief Judge, and IRWIN and WRIGHT, Judges.

IRWIN, Judge.

This is an appeal in a dissolution of marriage proceeding. Julia C. John appeals from an order of the district court dissolving her marriage to Tony John, and she assigns as error that the court failed to award her alimony, an equitable percentage of the marital property, and a sufficient amount for attorney fees and costs.

## STANDARD OF REVIEW

In appeals involving actions for dissolution of marriage, an appellate court's review is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. When the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Larimore v. Larimore*, 240 Neb. 13, 480 N.W.2d 192 (1992).

## FACTS

The record shows that the parties were married April 16, 1966, when Julia was 22 years old and Tony was 23. Three children were born to the parties. Only the youngest child, Anthony, was a minor at the time of trial. He was 16 and attending high school. Custody of Anthony was awarded to Julia.

Julia works at the Omaha Veterans' Administration Medical Center as a radiology technician. She has worked as a radiology technician for 28 years. At the time of trial, her net monthly earnings were $1,070. Tony has been employed for the past 15 years at FirsTier Bank and currently has the position of personal banking center manager. Prior to his employment at the bank, he worked as a police officer for the Omaha Police Division. He has a disability pension for life from his work as a police officer. His net monthly income for 1991, including his disability pension payment of $897, was approximately $2,850. Julia claimed monthly living expenses of $2,905, and Tony

claimed monthly expenses of $2,784.

The valuation of the assets of the parties was essentially agreed upon by the parties, and the division of those assets by the district court was as follows: Julia was awarded personal property and household furnishings in her possession, the 1990 Ford Tempo, the 1980 Datsun wagon, her Veterans' Administration retirement plan, the couple's 1990 federal income tax refund, and the Cornhusker Motor Club and FirsTier Bank checks jointly issued to the parties. Tony was awarded personal property and furnishings in his possession, the 1988 Toyota four-wheel-drive vehicle, the Woodmen of the World life insurance policy on his life, and the FirsTier and Blockbuster Video stock. Tony was ordered to pay Julia $300 per month of his city of Omaha pension so long as he is entitled to draw the pension. Each party was awarded one-half of the FirsTier profit-sharing plan, one-half of the FirsTier retirement plan, and the IRA accounts in his or her name. Both parties agreed that the family home should be sold and the proceeds divided equally. In addition, neither party was awarded alimony.

## DISCUSSION

*Alimony and Property Division.*

The division of property and the award of alimony are matters initially entrusted to the discretion of the trial judge. *Policky v. Policky*, 239 Neb. 1032, 479 N.W.2d 795 (1992). In a dissolution of marriage proceeding, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties; duration of the marriage; history of the contributions to the marriage by each party, including contributions to the care and education of the children; interruption of personal careers or educational opportunities; and ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. *Druba v. Druba*, 238 Neb. 279, 470 N.W.2d 176 (1991); Neb. Rev. Stat. § 42-365 (Reissue 1988).

Julia contends that the property division results in the

following:

| | Julia | Tony |
|---|---|---|
| 1. House | $ 13,630.00 | $ 13,630.00 |
| 2. Household goods | 1,770.00 | 3,215.00 |
| 3. Toyota | | 12,000.00 |
| 4. Trailer | | 2,000.00 |
| 5. Tempo | 7,300.00 | |
| 6. Datsun | 500.00 | |
| 7. Woodmen insurance | | 118.00 |
| 8. IRA | 4,494.63 | 4,773.55 |
| 9. Blockbuster stock | | 1,515.00 |
| 10. Guns | | 5,000.00 |
| 11. Coin collection | | 500.00 |
| 12. VA retirement | 270.00 | |
| 13. Checks | 1,438.00 | |
| 14. Credit card debt | | (600.00) |
| 15. FirsTier stock | | 14,695.50 |
| 16. FirsTier profit-sharing plan | 21,311.00 | 21,311.00 |
| 17. Police pension | 43,227.19 | 87,764.29 |
| 18. FirsTier retirement plan | 23,056.00 | 23,056.00 |
| 38% = | $116,996.82 | $188,978.34 = 62% |

Julia argues that under § 42-365 and Neb. Rev. Stat. § 42-366 (Reissue 1988), a wife of 26 years who has contributed equally with her husband in the accumulation of marital assets should be awarded one-half of the marital estate, including pension rights and securities. Specifically, she argues that she should receive one-half of Tony's pension from the city of Omaha and one-half the value of the FirsTier stock.

Section 42-365 states that the purpose of a property division is to distribute the marital assets equitably between the parties. Section 42-366(8) requires that the court "include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party, whether vested or not vested." See, also, *Parker v.*

*Parker*, 1 Neb. App. 187, 492 N.W.2d 50 (1992); *Rockwood v. Rockwood*, 219 Neb. 21, 360 N.W.2d 497 (1985).

Tony concedes that under *Maricle v. Maricle*, 221 Neb. 552, 378 N.W.2d 855 (1985), and § 42-366(8), a disability pension is a marital asset, but argues that because such a pension is not deferred compensation, it is deserving of special treatment. He is rather obscure as to exactly what that treatment should be. In *Maricle*, at issue was whether or not personal injury proceeds should be included in the marital estate. In determining what assets constituted the marital estate, the Supreme Court stated that Nebraska, by statute, is an equitable property jurisdiction. "Although there are marked differences in the treatment of proceeds from personal injury recoveries, many equitable property jurisdictions consider that the proceeds are part of the marital estate." *Id.* at 554, 378 N.W.2d at 857. The court looked to *Gan v. Gan*, 83 Ill. App. 3d 265, 404 N.E.2d 306 (1980).

> In a case involving similar facts, the Illinois Appellate Court reasoned that since the husband, as a result of his personal injury, was unable to work and therefore satisfy his obligation of support, the settlement would to some extent enable him to provide for his family as he had done prior to his injury. Therefore, the court found that the settlement was part of the marital estate and should be considered in the division of property.

*Maricle v. Maricle*, 221 Neb. at 554, 378 N.W.2d at 857. The *Maricle* court held that in that case, equity required that the proceeds from the settlement of a personal injury claim be included in the marital estate.

Some jurisdictions have analogized disability payments to personal injury proceeds. See, e.g., *Ward v. Ward*, 101 A.D.2d 1006, 476 N.Y.S.2d 712 (1984) (disability benefits were in the nature of compensation for personal injuries); *Flowers v. Flowers*, 118 Ariz. 577, 578 P.2d 1006 (Ariz. App. 1978) (disability pay compares to compensation for personal injury). We agree with this analogy. We do note that the Arizona Supreme Court in *Jurek v. Jurek*, 124 Ariz. 596, 606 P.2d 812 (1980), held that personal injury proceeds were separate property after deductions for community expenses and loss. As did the court in *Maricle*, we find, based on the facts as

presented by the record, that it is proper in this case to include Tony's disability pension in the marital estate. There is nothing in the record to show the nature of the disability or any connected expenses. Given his present job and the other scant information there is in this record, we see nothing to indicate that his earning capacity was affected by his disabling injury, whatever it is. We do not know what it is because the record contains nothing about it. Likewise, there is nothing in the record to indicate that he has any unusual medical expenses due to the unknown disability. We can imagine situations where in fact a person's earning capacity or medical expenses may be greatly impacted by a disability and result in a different outcome than what we hold in this case.

Julia contends that she was awarded 38 percent of the marital estate, while Tony was awarded 62 percent. Tony maintains that "[t]his breakdown largely arises by including the valuation of the police pension at a capital sum." Brief for appellee at 8. The district court did not value the pension in that manner. The court merely awarded a dollar amount of Tony's monthly pension to Julia.

If the pension is removed from the above calculations, the difference between the awards is $27,444.42. A significant part of this disparity is due to the difference in the value of automobiles, the value of Tony's gun collection, and the value of a trailer. Another $1,445 of the difference is accounted for by the difference of the household goods awarded. The parties had between them about $144,000 in assets other than the police pension, household goods, coin and gun collections, and automobiles. Julia received approximately $64,000, or 44.4 percent of the assets, and Tony received approximately $80,000, or 55.5 percent.

The ultimate test for division of marital property in connection with the dissolution of a marriage is one of reasonableness. *Mellor v. Mellor*, 235 Neb. 361, 455 N.W.2d 177 (1990). In our view, reasonableness in this case means an equal division of the marital estate, or as nearly equal as possible.

The division of property by the trial court, exclusive of the disability pension, comports with the implied notion found in

*Parker v. Parker*, 1 Neb. App. 187, 492 N.W.2d 50 (1992), that in many dissolution proceedings, a reasonable division means an equal division of the marital estate, or as nearly equal as the evidence permits.

Given the record before us, we hold that the trial court abused its discretion regarding the disability pension. In our view, a reasonable division of this pension means an equal division. By awarding Julia $300 per month of Tony's city of Omaha pension "so long as he is entitled to draw the retirement pension," the trial court deprived her of any benefit of future appreciation in the value of this pension and the security of receiving a present interest in the pension. See *Kramer v. Kramer*, 3 NCA 110 (1993). Therefore, we reverse that portion of the decree regarding the disability pension and remand the matter to the district court with directions to award Julia a 50-percent interest in Tony's disability pension.

The trial court determined that neither party should be awarded alimony. The record is inadequate to establish that there was an abuse of discretion in the district court's failure to award alimony in this case.

*Attorney Fees.*

The trial court ordered Tony to pay the sum of $3,000 toward Julia's attorney fees. Julia contends that this amount is insufficient under the circumstances because Tony's failure to disclose information substantially contributed to the high cost of her attorney fees and related expenses.

The factors to consider in determining the value of legal services rendered by an attorney are set forth in *Weber v. Weber*, 200 Neb. 659, 671, 265 N.W.2d 436, 443 (1978):

> The award of attorney's fees involves consideration of such factors as the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation of the case, the skill devoted to preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.

The awarding of attorney fees is a matter within the trial

court's initial discretion, and while it is reviewed de novo on the record, it will not be disturbed on appeal in the absence of abuse of discretion. *Ritter v. Ritter*, 234 Neb. 203, 450 N.W.2d 204 (1990); *Busekist v. Busekist*, 224 Neb. 510, 398 N.W.2d 722 (1987). Under the circumstances of this case, the district court's award of $3,000 is not an abuse of discretion.

Julia requests this court to grant her attorney fees and costs incurred in connection with this appeal. Her counsel submitted an affidavit and motion for attorney fees, pursuant to Neb. Ct. R. of Prac. 9F (rev. 1992). See *Kraft v. Paul Reed Constr. & Supply*, 239 Neb. 257, 475 N.W.2d 513 (1991). Julia is awarded $1,000 for attorney fees and costs in connection with this appeal.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.